UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TANYA JOHNSON,

                Plaintiff,

     - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-3255 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Tanya Johnson brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. Plaintiff seeks an order finding that she is entitled to SSI or, in the alternative, remand of this matter for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings, denies the Commissioner's cross-motion, and remands this matter for further administrative proceedings.

## BACKGROUND

### I. Procedural History

      Plaintiff filed an application for SSI on July 25, 2014, alleging disability beginning on September 30, 2009. (Administrative Transcript ("Tr."[1]), Dkt. 8, at 192–96.) On October 20, 2014, Plaintiff's application was initially denied. (*Id.* at 84–91.) Plaintiff then filed a request for

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

a hearing before an ALJ. (*Id.* at 94–95.) On May 19, 2017, Plaintiff appeared with counsel via video before ALJ Lisa Hibner. (*Id.* at 18–44.) On September 21, 2017, the ALJ found that Plaintiff was not disabled under the Social Security Act (the "Act") based on her application for SSI. (*Id.* at 68–79.)[2] On April 3, 2019, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–9.) Thereafter, Plaintiff timely[3] commenced this action.

## II. The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe

---

[2] Plaintiff also filed an application for disability insurance benefits ("DIB") on June 30, 2014. (*Id.* at 68, 188–91). At the hearing before the ALJ, Plaintiff voluntarily elected to amend the alleged onset date of disability to June 30, 2014, resulting in dismissal of her request for DIB. (*Id.* at 21–22, 68.) Plaintiff does not appeal that dismissal.

[3] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on April 8, 2019, and that the instant action, filed on May 31, 2019—53 days later—is therefore timely. (*See generally* Complaint, Dkt. 1.)

impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is not severe, then the claimant is not disabled within the meaning of the Act. In this case, the ALJ found that Plaintiff suffers from the following severe impairments: "anxiety; depression; and panic attacks." (Tr., at 71 (citation omitted).) The ALJ then progressed to the third step and determined that Plaintiff's severe impairments, either singly or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)"—the Listings. (*Id.*) Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[4] to perform

> a full range of work at all exertional levels[5] but with the following non-exertional limitations: the claimant is limited to perform simple, routine and repetitive tasks, can occasionally deal with supervisors and coworkers, and never respond to the public. In addition, the claimant can work in a low stress job, defined as having only occasional decision making & only occasional changes in the work setting, and work would be with occasional judgment required on the job.

---

[4] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[5] According to the applicable regulations, jobs are classified as "sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. In stating that Plaintiff could perform "a full range of work at all exertional levels," the Court therefore assumes that the ALJ found Plaintiff capable of performing

> [v]ery heavy work[, which] involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, [the SSA] determine[s] that he or she can also do heavy, medium, light and sedentary work.

*Id.* § 404.1567(e).

(*Id.* at 73.) Based upon this RFC finding, the ALJ determined that Plaintiff was unable to perform any past relevant work as a bus driver, nurse aide, or meter reader but was capable of performing certain jobs that exist in significant numbers in the national economy, such as "Cleaner, Industrial," "Dishwasher," and "Hand Packager." (*Id.* at 77–78 (citations omitted).) The ALJ accordingly concluded that Plaintiff was not disabled. (*Id.* at 78–79.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation and alterations omitted). "In determining whether the [Commissioner]'s findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision." (internal quotation omitted)). Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld," *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

## DISCUSSION

Plaintiff argues that the ALJ's RFC determination improperly discounted the opinion of Plaintiff's treating psychiatrist, in violation of the treating physician rule, and in the process improperly discounted Plaintiff's self-reported limitations in her functioning. (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mem."), Dkt. 9-1, at 8–12.) The Court finds that remand is warranted on both of these bases.[6]

### I.     Medical Opinion Evidence

#### A.     Plaintiff's Treating Psychiatrist

In her RFC determination, the ALJ concluded that "the record does not contain any medically supported opinions from treating or examining physicians indicating that [Plaintiff] has been disabled at any point during the period at issue" (Tr., at 76–77), and that the opinion of Plaintiff's treating psychiatrist "conflicts with his own treatment notes and therefore, does not merit great weight" (*id.* at 77 (record citations omitted)). The Court finds that this disregard for the opinion of Plaintiff's treating psychiatrist was error, in violation of the treating physician rule.

---

[6] Vocational expert ("VE") Christine A. Carrozza Slusarski appeared before the ALJ (*id.* at 68) and answered a number of questions regarding the ability of persons of the same age, education, work history, and limitations as Plaintiff to perform Plaintiff's past relevant work (*id.* at 40–43). Plaintiff also argues that the VE's testimony is "non-probative" and that "[t]he VE's opinions were predicated on a faulty hypothetical, a psychiatric profile that is inconsistent with the medical evidence." (Pl.'s Mem., Dkt. 9-1, at 13.) However, "[t]he Court is not in a position to evaluate this argument," as "this case [must] be remanded because of an incorrect application of the treating physician rule . . . ." *Hidalgo v. Colvin*, No. 12-CV-9009 (LTS) (SN), 2014 WL 2884018, at *21 (S.D.N.Y. June 25, 2014). "Once the perceived inconsistencies in the record have been cleared and the relative weights of the [medical] opinions . . . are clarified, any hypothetical posed to the vocational expert must be adjusted to match the evidence in the record." *Id.*

5

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[7] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation, alterations, and citations omitted). Under the treating physician rule, a treating source's opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2). If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Courts in this Circuit "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion[.]" *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2003).

On April 22, 2016, Plaintiff first saw her treating psychiatrist, Kenneth Asogwa, M.D., "on account of anxiety, inability to go out of her house alone, and depressed mood." (Tr., at 539.) Plaintiff reported that her medication was "not able to control [her] anxiety." (*Id.*) Upon examination, Dr. Asogwa diagnosed "major depressive disorder, recurrent episode, mild" and

---

[7] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c). Because Plaintiff's claim was filed on July 25, 2014, the treating physician rule applies.

6

"panic disorder with agoraphobia." (*Id.* at 540.) On May 12, 2016, Dr. Asogwa observed that Plaintiff had an "anxious" mood and "constricted" affect. (*Id.* at 542–43.) He discussed with Plaintiff changing from her prior medications and prescribed Zoloft 50 mg daily. (*Id.* at 544.) On May 19, 2016, Plaintiff again had an "anxious" and "depressed" mood, although a "constricted (but brighter)" affect. (*Id.* 545–46.) Plaintiff reported no side effects from medication. (*Id.* at 547.) On June 2, 2016, Plaintiff reported that she had not had a panic attack in three weeks; upon examination she again presented with an "anxious" mood and "constricted (but brighter)" affect. (*Id.* at 548–49.) On June 9, 2016, Plaintiff reported low self-esteem and depression, and Dr. Asogwa again observed that she had a "depressed" mood and "constricted (but brighter)" affect. (*Id.* at 551–52.) Also on June 9, Dr. Asogwa increased Plaintiff's Zoloft prescription to 100mg daily. (*Id.* at 553.)

On June 16, 2016, Dr. Asogwa noted a "euthymic"[8] mood and "full range" affect, and that Plaintiff had "no fresh compl[ai]nt." (*Id.* 554–55.) On July 7, 2016, Dr. Asogwa again found Plaintiff to be in a "euthymic" mood. (*Id.* at 558–59.) He also prescribed Xanax 0.5 mg daily and Meloxicam for back pain. (*Id.* at 560.) On July 14, 2016, Plaintiff reported that she "feels the Zoloft is working." (*Id.* at 561.) Plaintiff reported "less anxiety and depression" on August 4, 2016 and that "Zoloft [wa]s helping her." (*Id.* at 564). On August 16, 2016, Plaintiff reported taking Xanax to manage a panic attack and that she was "able to go to [the] store twice without being accompanied by family member[s]."[9] (*Id.* at 568.) On September 1, 2016, Plaintiff

---

[8] Euthymia is "[m]oderation of mood, not manic or depressed." *Euthymia*, Stedman's Medical Dictionary 307600 (Nov. 2014).

[9] Plaintiff's other treatment notes explain, however, that Plaintiff was always transported to the store by a family member, who would then wait in the parking lot. (*See, e.g., id.* at 572 ("[Plaintiff] reports she has been practicing frequently by going into [the] store with [a] family member in the truck waiting for her, and states she inten[ds] to continue to do so.").)

"report[ed] anxiety and depression," and Dr. Asogwa found on examination that she had an "anxious" mood and "constricted" affect." (*Id.* at 572–73.) On September 8, 2016, Plaintiff reported "minimal depression and anxiety," and that she "sent [a] letter stating that she has mental illness to [the] [C]ity of [N]ew York so she can be kept in the list of potential hire[s]." (*Id.* at 575.) On October 13, 2016, Plaintiff again reported that she was "less anxious and less depressed" (*id.* at 578), and, in examinations from November 2016 through April 2017, Plaintiff "denie[d] worsening anxiety[,] . . . denie[d] panic attack, chest pain or palpitation[,] . . . [and] denie[d] worsening depression, hopeless/helpless feeling" (*id.* at 582, 585, 588, 591, 595, 599, 605, 608, 612, 615, 618; *see also id.* at 586, 589, 592, 596, 600, 606, 613, 619 (noting "euthymic" mood and "full range [of]" affect)).[10]

Dr. Asogwa's May 4, 2017 medical source statement noted Plaintiff's "severe anxiety," "severe panic attacks," and "chest tightness." (*Id.* at 488.) Dr. Asogwa opined that Plaintiff would have "extreme" restrictions in "[i]nteract[ing] appropriately with the public" and "[r]espond[ing] appropriately to usual work situations and to changes in a routine work setting"; and "marked" restrictions in "interact[ing] appropriately with supervisor(s) . . . and co-workers." (*Id.*) In a treatment plan also dated May 4, 2017, Dr. Asogwa noted that Plaintiff's progress towards discharge criteria included "[l]ess number of panic attack[s]," but also that Plaintiff was "[s]till

---

[10] At the same time, some of Dr. Asogwa's notes contradict the other language repeated from prior examinations regarding improvements in Plaintiff's symptoms. For example, on April 6 and May 11, 2017, Dr. Asogwa discussed an "[augmentation] of Zoloft with activating antidepressant," which Plaintiff declined, and examined Plaintiff as having a "depressed" mood and "constricted" affect. (*Id.* at 608–09, 615–16.) Similarly, Dr. Asogwa's May 25, 2017 note indicates that Plaintiff reported "trouble with sleep" and that she suffered from a panic attack prior to her "court session . . . for social security disability," which the Court assumes was the May 19, 2017 hearing before the ALJ. (*Id.* at 618.)

unable to drive [a] car without someone with her" and had not fulfilled the criteria for discharge of "[being] able to [] shop, and go into public [places] without panic[] attack[s]." (*Id.* at 621–22.)

The ALJ assigned "only some weight" to Dr. Asogwa's opinion because "[his] office notes fail to support [his] highly restrictive assessment of [Plaintiff's] functioning, and given the generally conservative mental health care provided." (*Id.* at 76.) However, the ALJ committed error where she focused only on the ways in which Dr. Asogwa's opinion was not supported by his treatment notes, rather than the ways in which his opinion was consistent with them. *See Mateo v. Colvin*, No. 14-CV-6109 (MKB), 2016 WL 1255724, at *14 (E.D.N.Y. Mar. 28, 2016) (collecting cases). Dr. Asogwa's observations that Plaintiff's depression, anxiety, and suffering from panic attacks were not "worsening" is not equivalent to permanent improvement. As Dr. Asogwa noted, Plaintiff did improve somewhat but did not fulfill the criteria for discharge and still struggled to perform basic activities, such as driving a car alone, maintaining social relationships, and entering public places without suffering from panic attacks. (*See* Tr., at 621–22.) Moreover, while Zoloft by all accounts did improve Plaintiff's symptoms, "there is no medical basis for the ALJ's conclusion that this medication sufficiently manages Plaintiff's [] anxiety to a degree where [s]he can perform work-related functions."[11] *Collins v. Berryhill*, No. 16-CV-6673 (PKC), 2018 WL 259282, at *7 (E.D.N.Y. Jan. 2, 2018) (citing *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)). Thus, the ALJ's observation that "[Plaintiff's] treatment has been beneficial in improving [her] functionality" (*id.* at 76), while supported by the medical record, does not suggest that Plaintiff's functionality is not still markedly limited by her mental impairments as managed by her medications.

---

[11] Relatedly, the Court does not consider the ALJ's other observation that "[Plaintiff] failed to report any side effects of her medications since 2016" (*id.* at 76) as somehow supporting a finding that Plaintiff's medications were that much more effective at controlling her symptoms.

9

With regard to the ALJ's highlighting of Plaintiff's "generally conservative mental health care" (*id.* at 76), this Circuit is clear that an ALJ "cannot discount a treating physician's opinion because the physician has 'recommended a conservative treatment regimen.'" *Ortiz Torres v. Colvin*, 939 F. Supp. 2d 172, 183 (N.D.N.Y. 2013) (quoting *Burgess*, 537 F.3d at 129). This is true where a plaintiff is "prescribed only one medication," for a treating physician may "increase[] the dosage of [a] [p]laintiff's medication over time and change[] [a] [p]laintiff's prescription in response to indications that the initial medication was ineffective. In relying on an assertion that such treatment was 'conservative,' the ALJ improperly determined that Plaintiff's condition was not severe." *Mateo*, 2016 WL 1255724, at *4, 15 (discussing treating psychiatrist's prescription of Zoloft to plaintiff) (citing *Burgess*, 537 F.3d at 129; *Shaw*, 221 F.3d at 134–35). Moreover, Dr. Asogwa's discussions with Plaintiff on April 6 and May 11, 2017, in which he considered the "[augmentation] of Zoloft with activating antidepressant" that Plaintiff then declined, suggest that Dr. Asogwa continued to contemplate future adjustment of Plaintiff's prescriptions for more effective, and seemingly more aggressive, treatment. (Tr., at 608, 615.)

The ALJ's RFC determination also misconstrued Dr. Asogwa's treatment notes in several instances. For example, the ALJ found that Plaintiff could "go to the store without assistance as of August [2016]." (*Id.* at 75.) However, this is contradicted by subsequent treatment notes, such as Plaintiff's report on January 12, 2017, that she "continue[d] to go to [the] store accompanied [by] a family member."[12] (*Id.* at 595.) The ALJ also noted that "[Plaintiff] even applied for work

---

[12] Similarly, the ALJ's focus on Plaintiff's "increased social activities since June 2016" (*id.* at 76) is belied by the fact that these activities were family events (*see id.* at 572 (noting that Plaintiff attended a "barbecue party in her father's house" on August 20, 2016), 588 (noting that Plaintiff "will be spending time with her father" for Thanksgiving), 599 (noting that Plaintiff "spent time with her family during Christmas")). As plainly indicated by the treatment notes, Plaintiff is close to and relies upon her family members to go about performing her daily activities.

10

as of September 2016." (*Id.* at 76.) Indeed, on September 8, 2016, Plaintiff reported to Dr. Asogwa that "she sent the letter stating that she has mental illness to [the] [C]ity of [N]ew York so she can be kept in the list of potential hire[s]." (*Id.* at 575.) But Plaintiff's application to what appears to be a New York City program for the "potential hire" of those with mental illness is not akin to applying for regular employment. The ALJ also highlighted Plaintiff's reporting to Dr. Asogwa that "she has been considering doing volunteer work at a library since January 2017," which the ALJ noted "would typically involve work among the public." (*Id.* at 76.) But here the ALJ again misconstrued Dr. Asogwa's January 26, 2017 treatment notes, in which Plaintiff reported that she would "think of activity to get involved in, maybe volunteering at [a] place of work, library or anywhere she is accepted," and in which Dr. Asogwa's immediately prior note was that "[Plaintiff] continues to go to [the] store accompanied [by] a family member." (*Id.* at 599.) Plaintiff's aspirational hope to engage in volunteer work of some kind should, again, not be conflated with her functional capacity for employment.

"The ALJ cannot cherry pick the medical source opinions and the treatment records to support [her] RFC determination." *Maia v. Colvin*, No. 15-CV-584 (JGM), 2017 WL 715360, at *18 (D. Conn. Feb. 23, 2017); *see also Sutherland v. Barnhart*, 322 F. Supp. 282, 289 (E.D.N.Y. 2004) ("It is grounds for remand for the ALJ to ignore parts of the record that are probative of the claimant's disability claim." (collecting cases)). Here, the ALJ appears to have drawn from Dr. Asogwa's treatment notes primarily the contrary evidence needed to find that these treatment notes were inconsistent with Dr. Asogwa's medical opinions.[13] The Court finds that this selective

---

[13] To the extent that Dr. Asogwa's medical opinion may offer a more restrictive assessment of Plaintiff's functioning than his treatment notes would suggest, the Court nevertheless is skeptical that Dr. Asogwa's treatment notes, and the less restrictive functionality they may suggest, or anything else in Plaintiff's record, otherwise support the ALJ's ultimate RFC determination that

11

cherry-picking, and the ALJ's according of only "some weight" to Dr. Asogwa's medical opinion as a result, was error warranting remand.[14] Furthermore, to the extent the ALJ believed that Dr. Asogwa's treatment notes contradicted his medical opinion, the ALJ had a duty to supplement the record with further inquiry from Dr. Asogwa or other additional evidence in order to reconcile the seeming inconsistency. *See Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014) ("A perceived internal inconsistency about a critical finding is a 'conflict or ambiguity' which requires the ALJ to further develop the record by 'seek[ing] additional evidence or clarification' from the treating physician." (quoting 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1))); *Cabassa v. Astrue*, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *10 (E.D.N.Y. June 13, 2012) ("[W]hen an ALJ believes that a treating physician's opinion . . . is internally inconsistent, [s]he may not discredit the opinion on this basis but must affirmatively seek out clarifying information from the doctor." (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998))).

### B. Consultative Examiner

In conjunction with the Court's finding that the ALJ erred in according only some weight to the opinion of Dr. Asogwa, the Court also finds that the ALJ accorded improper weight to the opinion of consultative examiner ("CE") Brickell Quarles, Ph.D. Plaintiff saw CE Quarles for a single psychological examination on August 16, 2014 (*id.* at 475–78), and the ALJ assigned "great weight" to CE Quarles's assessment of Plaintiff's functionality "since [the assessment] is based

---

Plaintiff can perform "a full range of work at all exertional levels," including heavy or very heavy work, and "can occasionally deal with supervisors and coworkers." (*Id.* at 73.)

[14] Plaintiff testified at the hearing that she was seeing a "regular doctor, Dr. Singh." (*Id.* at 31.) The Court cannot ascertain from the record whether Dr. Singh is the primary care physician referred to by consultative examiner Brickell Quarles, Ph.D., discussed *infra*. (*See id.* at 476.) Regardless, on remand, the Court suggests that the ALJ further develop the record with treatment notes or a medical opinion from Dr. Singh.

12

on [her] direct observations of [Plaintiff] and the vague effects of [Plaintiff's] symptoms is reinforced by the lack of more significant findings throughout the record" (*id.* at 75).

On August 16, 2014, CE Quarles observed, and the ALJ acknowledged in her RFC determination, that Plaintiff presented with a "depressed" mood and "tearful[ness]" during the examination. (*Id.* at 75, 477.) Plaintiff at the time was taking Paxil, Xanax, and Klonopin prescribed by her primary care physician. (*Id.* at 478.) CE Quarles noted that "[Plaintiff] reports being able to cook, but gets help with the cleaning, and does not do the shopping. [Plaintiff] stated she cannot go out of the house." (*Id.* at 477.) CE Quarles went on to add that "[Plaintiff's] allegation appears consistent with this examination. Her vocational history, psychosocial history, and mental status exam are consistent with each other," and diagnosed Plaintiff with major depressive disorder, separation anxiety, and panic disorder with agoraphobia. (*Id.*) CE Quarles's prognosis for Plaintiff was "[g]uarded to fair given her long history of anxiety and her limited history of receiving treatment for her emotional issues." (*Id.*)

As a general matter, "a consulting physician's opinions or report should be given limited weight." *Adesina v. Astrue*, No. 12-CV-3184 (WFK), 2014 WL 5380938, at *9 (E.D.N.Y. Oct. 22, 2014) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). "This is justified because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Cruz*, 912 F.2d at 13 (internal quotation and citation omitted). An ALJ "may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." *Mayor v. Colvin*, No. 15-CV-344 (AJP), 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015). However, an ALJ giving greater weight to a consultative examiner's opinion should document his rationale for finding that the

13

consultative examiner's conclusions are more consistent with the underlying evidence than the opinion of the treating physician. *See Arzuaga v. Colvin*, No. 13-CV-6847 (AKH), 2014 WL 7180438, at *6 (S.D.N.Y. Dec. 11, 2014) (noting that the ALJ's "reasoning and adherence to the regulations [must be] clear" (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013))).

Here, in according "great weight" to the opinion of CE Quarles, the ALJ relied only on select portions of CE Quarles's opinion and discounted those parts that described Plaintiff's more serious functional limitations. CE Quarles reviewed Plaintiff's history of severe anxiety, panic attacks, and depression; observed Plaintiff as having a "depressed" mood; and described that Plaintiff was "tearful during the examination." (Tr., at 476–77.) CE Quarles described Plaintiff's functionality as including the inability to leave her home and further assessed that Plaintiff's "vocational history, psychosocial history, and mental status exam are consistent with each other." (*Id.* at 477–78.) However, the ALJ largely focused on CE Quarles's assessment that "[Plaintiff] might have limitations in concentration, memory, or intellectual functioning in a work setting as well as difficulty being away from her family and performing some activities of daily living." (*Id.* at 75 (record citation omitted).) Again, this was in spite of CE Quarles's other findings identifying more serious limitations.

The Court finds that the ALJ's decision to accord more weight to CE Quarles's opinion (based on a single 2014 examination) than Dr. Aswoga's opinion (based on more than one year of regular examinations) was erroneous, as was the ALJ's decision to accord "great weight" effectively to only those portions of CE Quarles's opinion that supported the ALJ's RFC determination, while ignoring those portions that did not. *See Sutherland*, 322 F. Supp. 2d at 289. Accordingly, the Court finds that remand is warranted where CE Quarles's opinion was both

misconstrued and assigned more weight than the opinion of Plaintiff's treating psychiatrist without a sufficient rationale.

### C. State Agency Consultants

In her RFC determination, the ALJ also accorded "some weight" to the findings of two state agency psychological consultants. (Tr., at 75.) In an October 14, 2014 assessment, the first consultant[15] concluded that Plaintiff retained the capacity to respond to supervision and to perform "simple tasks having brief/superficial contacts with co-workers and the public." (*Id.* at 53.) In a form dated September 24, 2014, the second consultant[16] noted that Plaintiff could perform "basic [activities of daily living] and care for [her] daughter," and noted that "details [regarding] panic attacks[,] frequency, triggers, duration" should be obtained. (*Id.* at 479.)

The Court finds that the ALJ erred when she accorded "some weight" both to the state agency consultants' opinions and the opinion of Dr. Asogwa without explaining, pursuant to the requirements of the treating physician rule, why these non-examining sources warranted such weight. Furthermore, even assuming that the ALJ acted properly in assigning equal weight to both sets of opinions, the assessments of the state agency consultants—the first of whom opined that Plaintiff could respond to supervision to perform "simple tasks having brief/superficial contacts with co-workers and the public" (*id.* at 53), and the second of whom gave no opinion at all on this issue (*id.* at 479)—were insufficient to support the ALJ's RFC determination that Plaintiff can "occasionally deal with supervisors and coworkers," engage in "occasional decision making [and] occasional changes in the work setting, and work . . . with occasional judgment required on the

---

[15] This consultant is identified only as "J. Straussner," and their credentials are not described. (*Id.* at 49–55.)

[16] This consultant is identified only as "S. Hou" (*id.* at 480) or "Dr. Hou" (*id.* at 75), without a description of their credentials.

15

job" (*id*. at 73). Thus, even to the extent the ALJ gave "some weight" to the state agency consultants' opinions, the Court finds that these opinions do not support the RFC determination and should not be accorded the same weight as was accorded Dr. Asogwa's opinion.

Accordingly, the Court finds that the ALJ did not properly weigh the medical opinion evidence in making her RFC determination.

## II. Plaintiff's Self-Reported Limitations

The ALJ further found that Plaintiff's hearing testimony was inconsistent with her claimed limitations, noting that "[Plaintiff] admitted she is self-sufficient in personal care, can prepare meals, is able to drive a vehicle, albeit when accompanied by a family member, and handles her daughter's care. Moreover, [Plaintiff] was contemplating work and/or volunteer activity." (*Id*. at 76.) The Court again finds that the ALJ erred where she improperly discounted aspects of Plaintiff's hearing testimony.

On May 19, 2017, Plaintiff testified that she lived with both her mother and her 17-year-old daughter. (*Id*. at 27.) She testified that she did not take public transportation, that she could only "drive with someone with [her]," and that "[u]sually [her] mom drives." (*Id*. at 28.) With regard to her medications, Plaintiff testified that "[t]he Xanax helps, the Zoloft, I'm still trying to get used to . . . but I still have [panic] attacks." (*Id*. at 30.) While Plaintiff testified that she could "attend[] to [her] personal needs" such as showering and getting dressed, she also testified that she could not do grocery shopping by herself, that she did laundry with her mother and daughter, that she prepared meals "sometimes," and that she "ha[d]n't lately" been doing household chores. (*Id*. at 33.) Plaintiff testified that she could not be alone, had not gone on any vacations, and had not taken any trips to visit family. (*Id*. at 35.) Plaintiff primarily spent her days watching television. (*Id*. at 33–34.) According to Plaintiff, "if I'm by myself, I'll have like a panic attack. It's like a

16

fear that comes over me." (*Id.* at 30.) Plaintiff also did not engage in other activities, such as going to the movies, attending religious services, or bowling, because she "[doesn't] like being around a lot of people." (*Id.* at 34–35.) Plaintiff further testified that the panic attacks prevent her from working. (*Id.* at 30.)

The Court finds that Plaintiff's self-sufficiency in her personal care, ability to take care of herself while in the house, and occasional preparation of meals at home do not undermine her testimony that her panic attacks and anxiety severely limit her ability to leave the house and prevent her from working. Additionally, the ALJ's finding that Plaintiff reported engaging in "a relatively broad range of daily activities" (*id.* at 77) simply is not supported by Plaintiff's reports that she undertakes some activities at home with her family members, is consistently accompanied by family members when she leaves the house, and only on isolated occasions over several months attended social events with other family members. While an ALJ is not "required to credit [a plaintiff's] testimony about the severity of her pain and the functional limitations it cause[s,]" *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order), the ALJ does not have unbounded discretion in choosing to reject it; instead, the ALJ must determine whether a plaintiff's statements are consistent with the objective medical evidence, *see Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010). Here, Plaintiff's self-reports of her limitations are consistent with the results of her mental status examinations in Dr. Asogwa's treatment records and his medical opinion.

The Court thus finds that the ALJ erred in concluding that "[Plaintiff's] allegations and testimony are not consistent with the objective evidence of record" (Tr., at 77), and that remand is also warranted on this basis.

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's cross-motion for judgment on the pleadings and grants Plaintiff's motion. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2020
       Brooklyn, New York